**THE KOZUB LAW GROUP, PLC**
Richard W. Hundley, #019829
7537 E. McDonald Drive
Scottsdale, Arizona 85250
rhundley@kozublaw.com
(480) 624-2700

*Attorneys for Debtor Win Big Development, LLC*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **In Re:** | Chapter 11 |
| WIN BIG DEVELOPMENT, LLC, an Arizona limited liability company, | No. 2:20-bk-07495-DPC |
| Debtor. | **DEBTOR'S MOTION TO APPROVE SALE OF 1205 AND 1215 E. DEVONSHIRE AVENUE** |

Win Big Development, LLC ("Win Big Development" or "Debtor"), as Debtor-in-Possession, brings this Motion to Approve Sale of 1205 and 1215 E. Devonshire Avenue pursuant to 11 U.S.C. §363, Federal Rules of Bankruptcy Procedure, Rule 6004, and Local Rules of Bankruptcy Procedure, Rule 6004(1). Debtor moves for an order, approving the sale of the real property located at 1205 and 1215 E. Devonshire Avenue, Phoenix, Arizona, a total of 12 lots and common area, free and clear of liens, and with the distribution of the sales proceeds to be addressed as proposed. Debtor's motion is supported by the following:

**Introductory Note:**

This is the third Motion to Approve Sale brought by Debtor related to the 1205 and 1215 E. Devonshire Avenue parcels.

On June 16, 2021, the first Motion was brought, seeking to approve the $1.86 million offer submitted by McEquity Group. At the July 6, 2021, hearing, JET Real

1

Estate Holdings ("JET") was high bidder at a price of $1.95 million. Chestnut Realty Group ("Chestnut") was the approved backup bidder at $1.91 million. Thereafter, both JET and Chestnut cancelled at the end of their due diligence periods.

On April 7, 2022, the second Motion was brought, seeking to approve the $1.95 million offer of MTT Construction. The hearing was held June 7, 2022. The Order Approving Sale was issued July 13, 2022. The approved high bid of Rev Equity Group, LLC ("Rev"), of $2 million was approved. The backup bid of MTT Construction of $2 million, but calling for a higher brokerage commission was allowed as the alternate purchaser. Thereafter, Rev cancelled at the end of its due diligence period, citing an inability to timely obtain financing. MTT Construction was notified of its right to then proceed as buyer but did not respond.

## I.   DEBTOR'S CHAPTER 11 PROCEEDING

1.   An order for relief under Chapter 11 of the Bankruptcy Code was entered on June 24, 2020 (the "Petition Date"). The Debtor continues in possession of its property and in the operation of its business.

2.   Debtor is authorized to operate its business as Debtor-in-Possession pursuant to 11 U.S.C. §1107 and 1108.

3.   The Court has jurisdiction over this Chapter 11 proceeding under 28 U.S.C. §157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. §157(b)(2)(A) and (o). Debtor requests relief pursuant to 11 U.S.C. §363 as well as Federal Rules of Bankruptcy Procedure, Rule 6004 and Local Rules of Bankruptcy Procedure, Rule 6004-1.

## II.   SUMMARY OF FACTS

4.   Debtor is a real property developer. It, at the time of filing its Petition for relief, held title to thirteen (13) lots on which it had been in the process of constructing single family residences. One parcel, 3806 N. 14th Place, Phoenix, was previously sold through this proceeding. The remaining lots are the subject of this Motion and known as 1206 E. Devonshire Place, Lots 1-4, and 1215 E. Devonshire Place, Lots 5-12.

5.     As a result of the effects of the COVID-19 outbreak, Debtor's efforts to complete and sell residences was adversely affected. This caused it to default under the terms of its loans with the its primary source of funding, America's Specialty Finance Company ("ASFC"), holder of the first position deed of trust against 1205 E. Devonshire, Lots 1-4, and second position deed of trust on Lots 5 and 8-12, and which then began foreclosure proceedings.

6.     ASFC had scheduled the Trustee's Sales of all of the parcels against which it had deeds of trust. Debtor filed this Chapter 11 proceeding on June 24, 2020, to stay the Trustee's Sales.

7.     The subject of this Motion is the twelve (12) lots and common area which are commonly known as 1205 E. Devonshire, Lots 1-4, and 1215 E. Devonshire, Lots 5-12 (herein "the Devonshire Project").

8.     Partially built houses were present on the lots at the time of filing Debtor's Petition. In August 2020, they were damaged by fire. Lots 1-4 were destroyed.

9.     Available insurance proceeds reimbursed the City of Phoenix for the cost to remove the destroyed structures and clean up the lots.

10.     The insurance carrier, Zurich, also issued payment in the amount of $415,460 as a result of the fire damage. Payment was primarily made for the damage to Lots 1-4. Payment was issued jointly to Debtor and the senior secured lender on Lots 1-4, America's Specialty. The funds, by Stipulation of the parties, are currently held in a separate debtor-in-possession account to be disbursed only upon court order. The total insurance proceeds held is $419,795, and includes $4,335 for a prior and separate damage event related to Lots 1-4. The sale terms, discussed below, are contingent, in part, on the distribution of the insurance proceeds in a manner agreed upon by Debtor and ASFC.

11.     Debtor has entered into a Commercial Real Estate Purchase Contract ("Purchase Contract") for the sale of the Devonshire project. The buyer is Glasir Capital Partners, LLC, a Delaware limited liability company, or assign. The purchase price is

3

$1,885,000. Escrow is to close 51 days after Court approval. (See Exhibit 1, Purchase Contract.)

12. The proposed sale to the Glasir Capital Partners, LLC, is an arms' length transaction.

13. America's Specialty holds a note secured by a first position deed of trust with original balance of $1,360,000 against Lots 1-4. Its most recent payoff demand was of approximately $2.1 million. The amount accrued now is anticipated to be higher. This same loan is secured by junior position deeds of trust against Lots 5 and 8-12.

14. Capital Fund II, LLC, formerly held a note secured by a first position deed of trust with original balance of $300,000 against Lots 5 through 12. Its note and deed of trust have been assigned to Devoir Oblige Capital Group, LLC. It previously submitted a payoff demand of $367,000 although the amount now with accrued interest is understood to be higher.

15. There is a second position deed of trust recorded against Lot 6 in favor of Real Estate Finance Corp. ("REFCO"), securing the principal amount of $300,000. A 33.3% interest in such note and deed of trust was assigned to each of (1) the Evelyn J. Howe Revocable Living Trust ("Evelyn Howe Trust"), and (2) the Larry L. Howe Revocable Living Trust, ("Larry Howe Trust"), and each as to the principal amount of $100,000.

16. There is a second position deed of trust recorded against Lot 7 in favor of REFCO, securing the principal amount of $300,000. A 73% interest in such note and deed of trust was assigned to Arnold P. Friedman ("Friedman") as to the principal amount of $220,000.

17. There is a Judgment Lien recorded against the Devonshire Project by Logo Builders Southwest, LLC ("Logos"), resulting from Maricopa County Superior Court Case No. CV2019-015741, of $114,996.91, recorded on or about March 11, 2020, and in a position junior to the Deeds of Trust, referenced above.

4

18. REFCO works with Debtor and has been involved in the financing of certain of its holdings and administration of the construction projects. REFCO has agreed to waive its security held as to Lots 6 and 7 and receive no proceeds of sale. Its waiver, however, does not affect the deeds of trust recorded against these two lots to the extent assigned to the Evelyn Howe Trust, the Larry Howe Trust, and Friedman.

19. On November 2, 2020, this Court issued its Order Authorizing Employment of Marcus and Millichap Real Estate Investment Service and broker Ryan Sarbinoff to list and sell the Devonshire Project for Debtor. Pursuant to its agreement with Debtor, it was to receive a 6% commission to be shared with a buyer's broker. Sean Connolly has been the agent representing Debtor. This listing agreement, however, has expired. This broker was not involved in obtaining the Purchase Contract now being submitted for approval.

20. Pursuant to the Purchase Contract, the buyer is represented by US Investment Realty, LLC, and its agent, Alan Robinson.

21. The contemplated sale is a short sale. The amount due under the secured liens exceeds the purchase price.

22. The July 9, 2021, Order, and July 13, 2022, Order each included a provision by which the portion of the sales proceeds to be disbursed to secured creditors and lienholders would be deferred to allow the Court to later determine the amount due to each in view of the divergent priorities. Debtor asks a similar procedure and provision be applied again.

23. Debtor will not receive any proceeds of sale. Debtor is expected to receive a portion of the insurance proceeds to be able to pay administrative expenses, including U.S. Trustee's quarterly fees and attorney fees and costs.

24. The sale of the Devonshire Project is a typical transaction of the Debtor's, although unique in the sense construction on the Lots being sold is incomplete and, as to

5

several lots, destroyed by fire. This sale, if approved, will allow the pay down of Debtor's obligations to the secured creditors and lienholders.

25. Debtor therefore seeks Court approval of this sale in accordance with 11 U.S.C §363 and Bankruptcy Rule 6004.

## III. RELIEF REQUESTED

Debtor believes the offer from the proposed buyer, Glasir Capital Partners, represents the best price obtainable for the Devonshire Project. **Debtor does, however, believe and request the sale be subject to higher and better offers.**

Upon Court approval, the Devonshire Project will be sold free and clear of liens, claims, and encumbrances. Secured creditors' liens will attach to the extent of the amounts due to them for the release of their respective deeds of trust with the distribution to the lienholders to be addressed by this Court after closing. If the sale of the Devonshire Project is approved by the Court as requested, the transaction is scheduled to close on or before 51 days from Court approval, or as otherwise agreed upon by the Debtor and the buyer.

## IV. LOCAL RULE 6004-1

As set forth above,

(1) The sale is scheduled to close 51 days following Court approval.

(2) The buyer will be Glasir Capital Partners, LLC.

(3) The buyer is not an insider.

(4) The real property to be sold is 1205 and 1215 E. Devonshire Avenue, Lots 1-12 and the common area. A fee simple interest is being sold.

(5) The entities known or believed to hold an interest in the property are the Debtor herein, Win Big Development, LLC, and its lienholders, America's Specialty Finance Company, Devoir Oblige Capital Group, LLC, REFCO, Evelyn Howe Trust, Larry Howe Trust, Arnold Friedman, and Judgment lienholder, Logos.

(6) The sale is to be free of all liens and claims. This will be a short sale.

6

(7)     The sales price is $1.885 million A $60,000 deposit will be paid upon Court approval. The balance is due all cash at close of sale.

(8)     Debtor has made and will make the property available for inspection, if requested.

(9)     Debtor believes there is a need for higher and better bids.

(10)    Debtor asks any objections be filed no later than five (5) days before the hearing.

(11)    The only commission to be paid from the sale's proceeds will be to buyer's agent, US Investment Realty, LLC, of 2%, a total of $37,100.

(12)    There is no current appraisal of the property.

(13)    A motion for stay relief was filed by America's Specialty and is pending.

## V.     LEGAL AUTHORITY

Pursuant to 11 U.S.C. §363, a debtor may, after noticing a hearing, sell property other than in the ordinary course of business, free and clear of liens, with liens attaching to the proceeds. 11 U.S.C. §363(f) provides:

> The Trustee may sell property under subsection (b) or (c) of this section free and clear of interest in such property of an entity other than the estate, only if –
>
> (1)    Applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    Such entity consents;
>
> (3)    Such interest is a lien in the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    Such interest is in bona fide dispute;
>
> (5)    Such entity could be compelled in a legal irrevocable proceeding to accept a money satisfaction of such interest . . .

7

The sale of the Devonshire Project is within the primary business of the Debtor and its ordinary course of business. Debtor, however, has brought this motion to ensure the rights of the proposed buyer and those of the secured creditors are protected.

Debtor asks the sale be approved free and clear of liens pursuant to §363(f)(1) and applicable case law, including *In the Matter of Spanish Peaks Holding II, LLC,* 873 F.3d 892 (2017). If the sale is not approved and closed, trustee's sales would likely be held by the senior lenders, extinguishing all junior liens.

The proposed terms of sale satisfy 11 U.S.C §363. The senior secured liens and, at least as to some lots, junior secured liens, shall attach to the sales proceeds and be paid as directed by the Court.

The payment of the release price meets the requirement of §363(f)(1). As set forth above, a realtor's commission of $37,100 will be paid. In addition, other closing costs, including unpaid property tax, totaling $18,850, 1% of the sales price, are estimated.

**Waiver of fourteen day period:** Debtor requests a waiver of the fourteen day stay pursuant to Rule 6004(h) to allow the order approving the relief requested herein to take effect immediately so as to allow this sale to take place as soon as possible and to accommodate the senior secured lenders who are compromising their claims.

**WHEREFORE**, Debtor requests the following relief:

(1) That this Motion be granted;

(2) The sale of the Devonshire Project be authorized according to the terms set forth herein;

(3) Approving the amount and payment of the brokers' commissions, and other normal closing expenses;

(4) Provide the Order be effective immediately; and

(5) For such other and further relief as the Court deems appropriate.

8

DATED this 1s day of September, 2022.

THE KOZUB LAW GROUP, PLC

By:_____
Richard W. Hundley
7537 East McDonald Drive
Scottsdale, Arizona 85250
*Attorney for*

Copy mailed this 1s day
September, 2022, to:

United States Trustee
230 North First Avenue, Suite 204
Phoenix, Arizona 85003

By:_____

9

# Exhibit 1

US Investment Realty, LLC

# COMMERCIAL REAL ESTATE PURCHASE CONTRACT

Document updated:
**February 2019**



*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.*



## 1. PROPERTY

**1a.** 1. **BUYER:** ___Glasir Capital Partners , LLC, AND/OR NOMINEE___
BUYER'S NAME(S)

**1b.** 2. **SELLER:** ___Win Big Development LLC___ or ☐ as identified in Section 10c.
SELLER'S NAME(S)

3. **Property Description and Offer:** Buyer agrees to purchase and Seller agrees to sell the following real property:

4. Property Address: __1215 E DEVONSHIRE AVE__

5. City: __Phoenix__ County: __MARICOPA__ AZ, Zip Code: __85014__

6. Assessor's Parcel #(s): __155-16-079-C__

7. Legal Description: ☐ See attached ☒ To be provided by Escrow Company ☐ As follows: _____

8. _____

9. _____

10. which includes at no additional cost to Buyer, all fixtures and improvements thereon, as well as the following items, if any, owned
11. by Seller and presently located on or in the real property: electrical distribution systems (power panels, ducting, conduits,
12. disconnects), lighting fixtures, computer wiring, telephone distribution systems (lines, jacks, and connections), heating, ventilation,
13. and air conditioning equipment, evaporative coolers, air lines, flooring, window coverings, wall coverings, security and fire
14. detection systems/alarms, and

15. _____

16. _____

17. _____

18. (collectively the "Property"). All fixtures and improvements shall be free of liens and encumbrances unless otherwise specified.

**1c.** 19. **Leased items shall NOT be included in this sale.** Seller shall deliver notice of all leased items within ten (10) or _____ days
20. after Contract acceptance. Buyer shall provide notice of any leased items disapproved within the Due Diligence Period or five (5)
21. days after receipt of the notice, whichever is later.

**1d.** 22. **Personal Property Included:** _____

23. _____

24. _____

25. Personal property shall be transferred in AS-IS CONDITION, FREE AND CLEAR OF ANY LIENS AND ENCUMBRANCES
26. and SELLER MAKES NO WARRANTY of any kind, express or implied, (including, without limitation, ANY WARRANTY OF
27. MERCHANTABILITY).

28. $ __1,885,000.00__ Full Purchase Price, paid as outlined below.

29. $ __60,000.00__ Earnest Money _____

30. $ _____ Additional Earnest Money _____

31. $ __1,825,000.00__ due at closing _____

32. $ _____ _____

33. _____

34. _____

>>

<SELLER | SELLER <Initials

Initials> BUYER | BUYER



US Investment Realty, LLC, 1017 N Central Ave #2 Phoenix AZ 85004
Alan Robinson
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com
Phone: (602) 692-6313   Fax: (480) 557-7502
4715 n 12th st ,

**1e.** 35. **Earnest Money** is in the form of: ☒ Check ☐ Wire Transfer ☐ Other: _____
36. Upon Contract acceptance, but in no event later than five (5) days or _____ days after Contract acceptance, Earnest Money, if
37. any, will be deposited with: ☒ Escrow Company ☐ Other: _____
38. Buyer acknowledges that failure to timely deposit Earnest Money, if not cured after a cure notice is delivered pursuant to Section
39. 8a, shall be construed as a material breach enabling Seller to cancel this Contract.

40. **Buyer agrees that, if Buyer breaches this Contract, Earnest Money is subject to forfeiture.**

**1f.** 41. **Terms of Acceptance:** This offer will become a binding Contract when acceptance is signed by Seller and a signed copy
42. delivered in person, by mail, facsimile, or electronically, and received by Broker named in Section 9p
43. by: _____August 25_____, 2022' at ____5____ ☐ a.m. / ☒ p.m., Mountain Standard Time.
44. Buyer may withdraw this offer at any time prior to receipt of Seller's signed acceptance. If no signed acceptance is received by this
45. date and time, this offer shall be deemed withdrawn and Buyer's Earnest Money, if any, shall be returned.

**1g.** 46. **Addenda Incorporated:** ☐ Additional Clause ☐ Domestic Water Well ☐ Lead-Based Paint Disclosure
47. ☐ Loan Assumption ☐ On-Site Wastewater Treatment Facility ☐ Schedule of Personal Property ☐ Seller Financing
48. ☐ Solar Addendum ☐ Other: _____

**1h.** 49. **Escrow:** This Contract shall be used as escrow instructions. The Escrow Company employed by the parties to carry out the terms
50. of this Contract shall be:

51. _____Thomas Title Agency_____ _____Joel Montemayor_____
ESCROW COMPANY                    CONTACT PERSON
52. _____7150 E CAMELBACK RD 195_____ _____SCOTTSDALE_____ _____az_____ _____85251_____
ADDRESS                    CITY                    STATE                    ZIP CODE
53. _____jmontemayor@thomastitle.com_____ _____(480)248-9202_____
EMAIL                    PHONE                    FAX

54. Seller and Buyer instruct Escrow Company to immediately deliver to Seller, Buyer and Broker(s) a critical dates letter and a copy of
55. the Earnest Money receipt.

**1i.** 56. **Close of Escrow:** Seller and Buyer shall comply with all terms and conditions of this Contract and Close Escrow
57. on: _____SEE PAGE 9_____ ("COE Date"). If Escrow Company or recorder's office
MONTH            DAY            YEAR
58. is closed on the COE Date, COE shall occur on the next day that both are open for business. Any other closing date requires the
59. written mutual agreement of Seller and Buyer.

60. Seller and Buyer hereby agree that the COE shall be defined as recordation of the deed and any other documents required to
61. complete the transaction. The parties expressly agree that the failure of any party to comply with the terms and conditions of this
62. Section to allow COE to occur on the COE Date, if not cured after a cure notice is delivered pursuant to Section 8a, will constitute
63. a material breach of this Contract, rendering the Contract subject to cancellation.

**1j.** 64. **Possession and Keys:** Possession and occupancy of the Property shall be delivered to Buyer **at COE,**
65. **or** ☐ _____, subject to the rights of tenants under existing leases. Seller shall provide keys and/or
66. means to operate all locks, mailboxes, security system/alarms, access to all common area facilities, and:

67. _____
68. _____
69. _____
70. _____
71. _____
72. _____
73. _____

Commercial Real Estate Purchase Contract • Updated: February 2019
Copyright © 2019 Arizona Association of REALTORS®. All rights reserved.

<Initials            Initials>

Page 2 of 12

SELLER | SELLER                    BUYER | BUYER

Produced with zipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    4715 n 12th st ,

>>



DocuSign Envelope ID: 7063F219-E95E-46A9-866E-E9C90E6124FA

## 2. DISCLOSURE

2a. **74. Commercial Seller's Property Disclosure Statement ("SPDS"):** Seller shall deliver a completed Arizona REALTORS®
75. Commercial SPDS form to Buyer within five (5) days after Contract acceptance. Buyer shall provide notice of any SPDS items
76. disapproved within the Due Diligence Period or five (5) days after receipt of the SPDS, whichever is later.

2b. **77. Additional Seller Disclosures and Information:** Seller shall provide to Buyer the following disclosures and information pertinent
78. to the Property in writing within ten (10) days or _____ days after Contract acceptance:

79. • documents referencing any known pending special assessments, association fees, claims, or litigation;
80. • copies of covenants, conditions, restrictions, articles of incorporation, by-laws, other governing documents, and any other
81. documents required by law;
82. • financial statements, copies of current rent rolls, lists of current deposits, personal property lists, copies of leases (e.g.,
83. billboard, cell tower, laundry, trade fixtures), rental agreements, and service contracts;
84. • a copy of the most recent survey, if available;
85. • any and all notices regarding Seller or Tenant bankruptcy, probate, or insolvency proceedings;
86. • any and all notices of violation(s) of City, County, State or Federal building, zoning, fire, health laws, codes, statutes,
87. ordinances, regulations, or rules filed or issued regarding the Property; and
88. • any and all other agreements, documents, studies, or reports relating to the Property in Seller's possession or control
89. provided, however, that Seller shall not be required to deliver any report or study if the written contract that Seller entered
90. into with the consultant who prepared such report or study specifically forbids the dissemination of the report to others.

91. Buyer shall provide written notice to Seller of any additional Seller disclosures and information disapproved prior to the expiration
92. of the Due Diligence Period or five (5) days after receipt, whichever is later.

93. Seller ☐ shall ☐ shall not deliver estoppel certificates executed by all tenants to Buyer prior to expiration of the Due Diligence
94. Period. Buyer shall provide notice of any items disapproved within the Due Diligence Period or five (5) days after receipt of the
95. estoppel certificates, whichever is later.

2c. **96. Affidavit of Disclosure:** If the Property is located in an unincorporated area of the county, and five (5) or fewer parcels of property
97. other than subdivided property are being transferred, Seller shall deliver a completed Affidavit of Disclosure in the form required
98. by law to Buyer within five (5) days after Contract acceptance. Buyer shall provide notice of any Affidavit of Disclosure items
99. disapproved within the Due Diligence Period or five (5) days after receipt of the Affidavit of Disclosure, whichever is later.

2d. **100. Changes During Escrow:** Seller shall immediately notify Buyer: (i) of any changes to the Property or disclosures made herein,
101. in the SPDS, or otherwise; (ii) if Seller modifies any existing lease or other agreement affecting the Property; or (iii) if Seller enters
102. into any new leases, rental agreements, service contracts, or other agreements affecting the Property. Such notice shall be
103. considered an update of the SPDS. Unless Seller is already obligated by this Contract or any amendments hereto, to correct or
104. repair the changed item disclosed, Buyer shall be allowed five (5) days after delivery of such notice to provide notice of disapproval
105. to Seller.

106. **IF PROPERTY IS NOT USED FOR RESIDENTIAL PURPOSES: Section 3 does not apply, go to Section 4.**

## 3. DISCLOSURES FOR PROPERTY USED FOR RESIDENTIAL PURPOSES

3a. **107. Swimming Pool Barrier Regulations:** During the Due Diligence Period, Buyer agrees to investigate all applicable state, county,
108. and municipal Swimming Pool barrier regulations and agrees to comply with and pay all costs of compliance with said regulations
109. prior to occupying the Property, unless otherwise agreed in writing. If the Property contains a Swimming Pool, Buyer acknowledges
110. receipt of the Arizona Department of Health Services approved private pool safety notice.

111. **(BUYER'S INITIALS REQUIRED)** [initials] BUYER _____ BUYER

>>

[SELLER] SELLER <Initials    Initials> [BUYER] BUYER

4715 n 12th st ,

*Commercial Real Estate Purchase Contract >>*

3b. 112. **Lead-Based Paint Disclosure (Initials Required):** If the Property was built prior to 1978, Seller shall: (i) notify Buyer of any
113. known lead-based paint or lead-based paint hazards in or on the Property; (ii) provide Buyer with any lead-based paint risk
114. assessments or inspections of the Property in Seller's possession; (iii) provide Buyer with the Disclosure of Information on Lead-
115. based Paint and Lead-Based Paint Hazards, and any reports, records, pamphlets, and/or other materials referenced therein,
116. including the pamphlet "Protect Your Family from Lead in Your Home" (collectively "Lead-Based Paint Information").
117. ☐ Lead-Based Paint Information was provided prior to Contract acceptance and Buyer acknowledges the opportunity to conduct
118. lead based paint risk assessments or inspections during the Due Diligence Period.
119. ☐ Seller shall provide the Lead-Based Paint Information to Buyer within five (5) days after Contract acceptance. Buyer may within
120. ten (10) days or _____ days after receipt of the Lead-Based Paint Information conduct or obtain a risk assessment or inspection
121. of the Property for the presence of lead-based paint or lead based-paint hazards ("Assessment Period"). Buyer may within five
122. (5) days after receipt of the Lead-Based Paint Information or five (5) days after expiration of the Assessment Period cancel this
123. Contract in Buyer's sole discretion by delivering written notice of cancellation to Seller pursuant to Section 8c.

124. **Prior to 1978: If Property was constructed prior to 1978, (BUYER'S INITIALS REQUIRED)** <u>BUYER        BUYER</u>

125. **1978 or Later: If Property was constructed in 1978 or later, (BUYER'S INITIALS REQUIRED)** <u>BUYER        BUYER</u>

## 4. DUE DILIGENCE, FEASIBILITY, AND INSPECTIONS

4a. 126. **Due Diligence:** Buyer's due diligence, feasibility, and inspection period shall be thirty (30) days or ☐ _____ days after Contract
127. acceptance ("Due Diligence Period"). During the Due Diligence Period, Buyer shall satisfy itself with respect to the physical
128. condition of the Property, the value of the Property, the condition of title to the Property, and as to the feasibility and suitability of
129. the Property for Buyer's intended purpose.

4b. 130. **Buyer Disapproval:** If Buyer, in Buyer's sole discretion, disapproves of items as allowed herein, Buyer shall deliver to Seller a
131. signed notice of the items disapproved and state in the notice that Buyer elects to either:

132. (1) Immediately cancel this Contract, in which case:

133. (a) If Buyer's notice specifies disapproval of items as allowed herein, the Earnest Money shall be released to Buyer.

134. (b) If Buyer's notice fails to specify items disapproved as allowed herein, the cancellation will remain in effect but Buyer has
135. failed to comply with a provision of this Contract and Seller may deliver to Buyer a cure notice as required by Section 8a.
136. If Buyer fails to cure their non-compliance within three (3) days after delivery of such notice, Buyer shall be in breach and
137. Seller shall be entitled to the Earnest Money. If, prior to expiration of the Cure Period, Buyer delivers notice specifying
138. items disapproved as allowed herein, Buyer shall be entitled to a return of the Earnest Money.

139. **OR**

140. (2) Provide Seller an opportunity to correct the items disapproved, in which case:

141. (a) Seller shall respond in writing within five (5) days or _____ days after delivery to Seller of Buyer's notice of items
142. disapproved. Seller's failure to respond to Buyer in writing within the specified time period shall conclusively be deemed
143. Seller's refusal to correct any of the items disapproved.

144. **(b) If Seller agrees in writing to correct items disapproved, Seller shall correct the items, complete any repairs in**
145. **a workmanlike manner and deliver any paid receipts evidencing the corrections and repairs to Buyer three (3)**
146. **days or ☐ _____ days prior to COE Date.**

147. (c) If Seller is unwilling or unable to correct any of the items disapproved, Buyer may cancel this Contract within five (5) days
148. after delivery of Seller's response or after expiration of the time for Seller's response, whichever occurs first, and the
149. Earnest Money shall be released to Buyer. If Buyer does not cancel this Contract within the five (5) days as provided,
150. Buyer shall close escrow without correction of those items that Seller has not agreed in writing to correct.

151. **VERBAL DISCUSSIONS WILL NOT EXTEND THESE TIME PERIODS.** Only a written agreement signed by both parties will
152. extend response times or cancellation rights.

>>

Copyright © 2019 Arizona Association of REALTORS®. All rights reserved.

SELLER   SELLER                         BUYER   BUYER



Produced with zipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com       4715 n 12th st ,

DocuSign Envelope ID: 7063F219-E95E-46A9-866E-E9C90E6124FA

153. **BUYER'S FAILURE TO GIVE NOTICE OF DISAPPROVAL OF ITEMS OR CANCELLATION OF THIS CONTRACT WITHIN**
154. **THE SPECIFIED TIME PERIOD SHALL CONCLUSIVELY BE DEEMED BUYER'S ELECTION TO PROCEED WITH THE**
155. **TRANSACTION WITHOUT CORRECTION OF ANY DISAPPROVED ITEMS.**

156. If Buyer cancels this Contract, Buyer shall return all documents provided by Seller and provide Seller with copies of all reports or
157. studies generated by Buyer, provided, however, that Buyer shall not be required to deliver any such report or study if the written
158. contract that Buyer entered into with the consultant who prepared such report or study specifically forbids the dissemination of the
159. report or study to others.

4c. 160. **Inspections:** During the Due Diligence Period, Buyer shall have the right, at Buyer's expense, to select an inspector(s) and to
161. make economic, environmental, and physical inspections (including tests, surveys, and other studies) of the Property, including
162. but not limited to inspecting:

163. • built-in appliances
164. • compliance with Americans with Disabilities Act
165. • conditions conducive to mold
166. • cost of compliance with swimming pool regulations
167. • designated flood hazard areas
168. • easements and access
169. • electrical and mechanical systems
170. • elevators
171. • environmental hazards (such as asbestos,
172. formaldehyde, radon gas, lead-based paint, fuel or
173. chemical storage tanks, hazardous waste, other
174. substances, materials or products, and/or location in
175. a federal or state Superfund area)
176. • foundation
177. • geologic conditions
178. • heating and cooling
179. • leased items
180. • location of property lines
181. • mold

• Multiple Listing Service (MLS) representations
• plumbing (such as galvanized or polybutylene pipes)
• pool/spa and related equipment
• roof
• sewer/septic
• sign usage
• soil
• solar
• square footage
• structural
• use permits
• variances
• water damage
• water/utility or fire protection
• water/utility use restrictions and fees for services such as garbage
• well
• wood infestation
• zoning regulations

182. If the presence of sex offenders in the vicinity of the Property or the occurrence of a disease, natural death, suicide, homicide,
183. or other crime on or in the vicinity of the Property is a material matter to Buyer, it must be investigated by Buyer during the Due
184. Diligence Period.

4d. 185. **Square Footage:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE (OR NET ACREAGE) OF THE
186. REAL PROPERTY (LAND) OR IMPROVEMENTS THEREON IS APPROXIMATE. IF SQUARE FOOTAGE (OR NET ACREAGE) IS
187. A MATERIAL MATTER TO BUYER, IT MUST BE VERIFIED BY BUYER DURING THE DUE DILIGENCE PERIOD.

4e. 188. **Wood-Destroying Organism or Insect Inspection:** IF CURRENT OR PAST WOOD-DESTROYING ORGANISMS OR INSECTS
189. (SUCH AS TERMITES) ARE A MATERIAL MATTER TO BUYER, THESE ISSUES MUST BE INVESTIGATED DURING THE DUE
190. DILIGENCE PERIOD. Buyer shall order and pay for all wood-destroying organism or insect inspections performed during the Due
191. Diligence Period.

4f. 192. **Flood Hazard:** If the Property is situated in an area identified as having any special flood hazards by any governmental entity
193. including, but not limited to, being designated as a special flood hazard area by the Federal Emergency Management Agency
194. (FEMA), Buyer's lender may require the purchase of flood hazard insurance prior to COE or some future date. Special flood
195. hazards may affect the ability to encumber or improve the Property now or at some future date. Flood hazard designation of the
196. Property or cost of flood hazard insurance shall be determined by Buyer during the Due Diligence Period.

4g. 197. **Insurance:** Buyer shall ensure that any fire, casualty, or other insurance desired by Buyer, or required by any Lender, is in place at
198. COE. Buyer specifically releases Broker(s) from any obligations relating to such insurance.

>>

Commercial Real Estate Purchase Contract • Updated: February 2019
Copyright © 2019 Arizona Association of REALTORS®. All rights reserved.
Page 5 of 12
<Initials SELLER | SELLER      Initials> BUYER | BUYER
Produced with zipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com
4715 n 12th st ,



Case 2:20-bk-07495-DPC    Doc 184    Filed 09/01/22    Entered 09/01/22 16:14:19    Desc
Main Document    Page 15 of 22

DocuSign Envelope ID: 7063F219-E95E-46A9-866E-E9C90E6124FA

**4h.** 199. **Recommendations:** If any Broker recommends a builder, contractor, inspector, vendor, or any other person or entity to Seller or
200. Buyer for any purpose, such recommendation shall be independently investigated and evaluated by Seller or Buyer, who hereby
201. acknowledge that any decision to enter into any contractual arrangements with any such person or entity recommended by any
202. Broker will be based solely upon such independent investigation and evaluation. Seller and Buyer understand that said contractual
203. arrangement may result in a commission or fee to Broker, which shall be disclosed in writing to Seller and Buyer as required by
204. law.

**4i.** 205. **Buyer's Responsibility Regarding Inspections:** Buyer shall keep the Property free and clear of liens, shall indemnify and hold
206. Seller harmless from all liability, claims, demands, damages, and costs and shall repair all damages arising from the inspections.

**4j.** 207. **Walkthrough(s):** Seller grants Buyer and Buyer's inspector(s) reasonable access to conduct walkthrough(s) of the Property for
208. the purpose of satisfying Buyer that any corrections or repairs agreed to by Seller have been completed, and the Property is in
209. substantially the same condition as of the date of Contract acceptance. If Buyer does not conduct such walkthrough(s), Buyer
210. releases Seller and Broker(s) from liability for any defects that could have been discovered.

**4k.** 211. **Seller's Responsibility Regarding Inspections and Walkthrough(s):** Seller shall make the Property available for all inspections
212. and walkthrough(s) upon reasonable notice by Buyer. Seller shall, at Seller's expense, have all utilities on, including any propane,
213. until COE to enable Buyer to conduct these inspections and walkthrough(s).

**4l.** 214. **Sanitation and Waste Disposal Systems:** Buyer is aware and Seller warrants that the Property is on a:
215. ☐ sewer system ☐ conventional septic system ☐ alternative system

216. **IF A SEWER CONNECTION IS A MATERIAL MATTER TO BUYER, IT MUST BE INVESTIGATED DURING THE DUE**
217. **DILIGENCE PERIOD.** If the Property is served by a conventional septic or alternative system, the Arizona REALTORS® On-site
218. Wastewater Treatment Facility Addendum is incorporated herein by reference.

**4m.** 219. **Seller's Obligations Regarding Wells:** If any well is located on the Property, Seller shall deliver to Escrow Company before
220. COE, a copy of the Arizona Department of Water Resources ("ADWR") "Registration of Existing Wells." Escrow Company is hereby
221. instructed to send to the ADWR a "Change of Well Information." Seller does not warrant the gallons per minute as reflected on the
222. ADWR certification of registration. Buyer may verify gallons per minute during the Due Diligence Period through a certified flow
223. test.

224. **IF THIS IS AN ALL CASH SALE: (i) A Letter of Credit or a source of funds from a financial institution documenting the**
225. **availability of funds to close escrow is attached hereto; and (ii) Section 5 does not apply—go to Section 6.**

## 5. FINANCING

**5a.** 226. **This sale** ☐ **is** ☒ **is not contingent upon Buyer obtaining a satisfactory financing commitment within the Financing**
227. **Commitment Contingency Period.** If sale is not contingent on a financing commitment, Sections 5b and 5c do not apply—go to
228. Section 6.

229. If financing is to be other than new financing, see attached financing addendum. This addendum cannot be assigned to a new
230. buyer without Seller's prior written consent.

**5b.** 231. **Financing Commitment Contingency Period:** If the sale is contingent upon Buyer obtaining a satisfactory financing
232. commitment, Buyer shall have thirty (30) days or ☐ _____ days after Contract acceptance ("Financing Commitment Contingency
233. Period") to obtain a financing commitment satisfactory to Buyer, in Buyer's sole discretion, for a loan to purchase the Property
234. or Buyer may cancel this Contract pursuant to Section 8c and receive a refund of the Earnest Money. **Prior to the expiration of**
235. **the financing commitment contingency period, Buyer shall deliver to Seller and Escrow Company written notice that**
236. **Buyer has not received such satisfactory financing commitment or Buyer shall be deemed to have waived the financing**
237. **commitment contingency and any right to cancel due to financing.**

**5c.** 238. **Financing Application:** Within ten (10) days after Contract acceptance, Buyer shall submit a formal financing application to a
239. lender of Buyer's choice. Buyer and Seller shall promptly provide to lender all materials and documents lender deems appropriate
240. to facilitate such lender's processing of financing application. Buyer agrees to pay fees as required by the lender and all other
241. financing costs. Buyer authorizes the lender to provide financing status updates to Broker(s).

>>



Case 2:20-bk-07495-DPC    Doc 184    Filed 09/01/22    Entered 09/01/22 16:14:19    Desc
Main Document        Page 16 of 22

DocuSign Envelope ID: 7063F219-E95E-46A9-866E-E9C90E6124FA

## 6. TITLE AND ESCROW

6a. 242. **Title and Vesting:** Taking title may have significant legal, estate planning, and tax consequences. Buyer should obtain legal
243. and tax advice.
244. Buyer will take title as **determined before COE** or ☐ Other: _____

6b. 245. **Title Commitment and Title Insurance:** Buyer shall be provided at Seller's expense a Standard Owner's Title Insurance Policy
246. showing the title vested in Buyer as provided in Section 6a. Buyer may acquire extended coverage(s) at Buyer's own additional
247. expense. Escrow Company is hereby instructed to obtain and distribute to Buyer and Broker(s) a Commitment for Title Insurance
248. in sufficient detail for the issuance of an Extended Owner's Title Insurance Policy together with complete and legible copies of
249. all documents that will remain as exceptions to Buyer's policy of title insurance ("Title Commitment"), within fifteen (15) days
250. after Contract acceptance. Buyer shall have until the expiration of the Due Diligence Period to provide written notice to Seller
251. of any items disapproved. Buyer shall have five (5) days after receipt of any amendments to Title Commitment or notice of any
252. subsequent exceptions to provide Seller written notice of any amendment or exceptions disapproved. REFER TO SECTION 4b
253. FOR IMPORTANT TERMS.
254. Seller shall convey title by special warranty deed or ☐ _____ deed.

6c. 255. **Additional Instructions:** (i) If the Escrow Company is also acting as the title agency but is not the title insurer issuing the title
256. insurance policy, Buyer and Seller hereby instruct the Escrow Company to deliver to Buyer and Seller upon Contract acceptance
257. a closing protection letter from the title insurer indemnifying Buyer and Seller for any losses due to fraudulent acts or breach of
258. escrow instructions by the Escrow Company. (ii) All documents necessary to close this transaction shall be executed promptly by
259. Seller and Buyer in the standard form used by Escrow Company. Escrow Company is hereby instructed to modify such documents
260. to the extent necessary to be consistent with this Contract. (iii) All closing and escrow costs, unless otherwise stated herein, shall
261. be allocated equally between Seller and Buyer in accordance with applicable laws and regulations. (iv) Escrow Company is hereby
262. instructed to send to Broker(s) copies of all notices and communications directed to or from Seller or Buyer. Escrow Company shall
263. provide Broker(s) with access to escrowed materials and information regarding the escrow.

6d. 264. **Prorations, Expenses and Adjustments:**
265. *Taxes:* Real property taxes payable by Seller shall be prorated through COE, based upon the latest tax bill available. The parties
266. agree that any discrepancy between the latest tax bill available and the actual tax bill when received shall be handled as a Post
267. Closing Matter and Buyer or Seller may be responsible for additional tax payments to each other.
268. *Insurance:* If Buyer takes an assignment of the existing casualty and/or liability insurance that is maintained by Seller, the current
269. premium shall be prorated through COE.
270. *Rents, Interest, and Expenses*: Rents, interest on existing notes if transferred, utilities, and operating expenses shall be prorated
271. through COE. The Parties agree to adjust any rents received after COE as a Post Closing Matter.
272. *Deposits:* All deposits held by Seller pursuant to rent/lease agreement(s) shall be credited against the cash required of Buyer at
273. COE or ☐ paid to Buyer by Seller at COE.

6e. 274. **Post Closing Matters:** The parties shall promptly adjust any item to be prorated that is not determined or determinable at COE as
275. a Post Closing Matter by appropriate cash payment to the other party outside of the escrow when the amount due is determined.
276. Seller and Buyer agree that Escrow Company and Broker(s) are relieved of any responsibilities for said adjustments.

6f. 277. **Prorations of Assessments and Fees:** All assessments and fees that are not a lien as of COE shall be prorated
278. as of COE or ☒ Other: <u>paid by seller</u> _____
279. _____

6g. 280. **Assessment Liens:** The amount of any assessment lien shall be prorated as of COE or ☒ Other: <u>paid by seller.</u>
281. _____

6h. 282. **IRS and FIRPTA Reporting:** The Foreign Investment in Real Property Tax Act ("FIRPTA") is applicable if Seller is a non-resident
283. alien individual, foreign corporation, foreign partnership, foreign trust, or foreign estate ("Foreign Person"). Seller agrees to comply
284. with IRS reporting requirements. If applicable, Seller agrees to complete, sign, and deliver to Escrow Company a certificate
285. indicating whether Seller is a Foreign Person pursuant to FIRPTA. Buyer acknowledges that if the Seller is a Foreign Person,
286. Buyer (or Escrow Company, as directed by Buyer) must withhold a tax of up to 15% of the purchase price, unless an exemption
287. applies.

>>

Case 2:20-bk-07495-DPC   Doc 184   Filed 09/01/22   Entered 09/01/22 16:14:19   Desc
Main Document   Page 17 of 22

DocuSign Envelope ID: 7063F219-E95E-46A9-866E-E9C90E6124FA

6i. 288. **RESPA:** The Real Estate Settlement Procedures Act (RESPA) requires that no Seller of property that will be purchased with the
289. assistance of a federally-related mortgage financing shall require, directly or indirectly, as a condition of selling the Property, that
290. title insurance covering the Property be purchased by Buyer from any particular title company.

6j. 291. **Tax Deferred Exchange:** Seller and Buyer are advised to consult a professional tax advisor regarding the advisability of a tax-
292. deferred exchange pursuant to I.R.C. §1031 or otherwise. Seller and Buyer agree to cooperate in a tax deferred exchange provided
293. that COE is not delayed. All additional costs in connection with any such tax deferred exchange shall be borne by the party
294. requesting the exchange. The non-requesting party and Broker(s) shall be indemnified and held harmless from any liability that
295. may arise from participation in the tax deferred exchange.

# 7. WARRANTIES

7a. 296. **Condition of Property: BUYER AND SELLER AGREE THE PROPERTY IS BEING SOLD IN ITS PRESENT PHYSICAL**
297. **CONDITION AS OF THE DATE OF CONTRACT ACCEPTANCE.** Seller makes no warranty to Buyer, either express or implied, as
298. to the condition, zoning, or fitness for any particular use or purpose of the Property. However, Seller shall maintain and repair the
299. Property so that at the earlier of possession or COE: (i) the Property, including all personal property included in the sale, will be in
300. substantially the same condition as on the date of Contract acceptance; and (ii) all personal property not included in the sale and
301. debris will be removed from the Property. Buyer is advised to conduct independent inspections and investigations regarding the
302. Property within the Due Diligence Period as specified in Section 4a. Buyer and Seller acknowledge and understand they may, but
303. are not obligated to, engage in negotiations for repairs/improvements to the Property. Any/all agreed upon repairs/improvements
304. will be addressed pursuant to Section 4b.

7b. 305. **Warranties that Survive Closing:** Seller warrants that Seller has disclosed to Buyer and Broker(s) all material latent defects and
306. any information concerning the Property known to Seller, excluding opinions of value, which materially and adversely affect the
307. consideration to be paid by Buyer. Prior to COE, Seller warrants that payment in full will have been made for all labor, professional
308. services, materials, machinery, fixtures, or tools furnished within the 150 days immediately preceding COE in connection with the
309. construction, alteration, or repair of any structure or improvement to the Property. Seller warrants that the information regarding
310. connection to a sewer system or on-site wastewater treatment facility (conventional septic or alternative) is correct to the best of
311. Seller's knowledge.

7c. 312. **Buyer Warranties:** Buyer warrants that Buyer has disclosed to Seller any information that may materially and adversely affect
313. Buyer's ability to close escrow or complete the obligations of this Contract. At the earlier of possession of the Property or COE,
314. Buyer warrants to Seller that Buyer has conducted all desired independent inspections and investigations and accepts the
315. Property. **Buyer warrants that Buyer is not relying on any verbal representations concerning the Property except disclosed**
316. **as follows:**
317. _____
318. _____
319. _____
320. _____
321. _____
322. _____
323. _____
324. _____
325. _____
326. _____
327. _____
328. _____
329. _____
330. _____

>>

DocuSign Envelope ID: 7063F219-E95E-46A9-866E-E9C90E6124FA

## 8. REMEDIES

**8a.** 331. **Cure Period:** A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any
332. provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If the
333. non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall become
334. a breach of Contract. If Escrow Company or recorder's office is closed on the last day of the Cure Period, and COE must occur to
335. cure a potential breach, COE shall occur on the next day that both are open for business. An unfulfilled contingency is not a breach
336. of Contract.

**8b.** 337. **Breach:** The parties agree to the remedies for breach of Contract indicated below.
338. *If Buyer is in breach: (check one)*
339. ☐ All Rights and Remedies: Seller may cancel this Contract pursuant to Section 8c and/or proceed upon any claim or remedy that
340. Seller may have in law or equity.
341. ☐ Liquidated Damages: The parties agree that it would be impracticable or extremely difficult to fix the actual damages that Seller
342. would suffer if Buyer fails to perform Buyer's obligations pursuant to this Contract. Therefore, if Buyer breaches this Contract, Seller
343. shall be entitled to the Earnest Money as Seller's sole remedy and Buyer shall be released from any further liability to Seller. In
344. such event, this Contract shall be cancelled and Seller shall pay any Escrow Company cancellation fees.

345.           **(INITIALS REQUIRED)**  _____ SELLER     _____ BUYER
                       SELLER                   BUYER

346. *If Seller is in breach:*
347. All Rights and Remedies: Buyer may cancel this Contract pursuant to Section 8c, shall be entitled to the return of the Earnest
348. Money and/or proceed upon any claim or remedy that Buyer may have in law or equity.

**8c.** 349. **Cancellation:** A party who wishes to exercise the right of cancellation as allowed herein may cancel this Contract by delivering
350. notice stating the reason for cancellation to the other party or to Escrow Company. Cancellation shall become effective immediately
351. upon delivery of the cancellation notice.

**8d.** 352. **Mediation:** Buyer and Seller agree to mediate any dispute or claim arising out of or relating to this Contract, any alleged breach
353. of this Contract, or services provided in relation to this Contract, claims for Earnest Money or representations made by Buyer or
354. Seller in connection with the sale, purchase, financing, condition, or other aspect of the Property to which this Contract pertains,
355. including, without limitation, allegations of concealment, misrepresentation, negligence, and/or fraud before resorting to court
356. action. Mediators cannot impose binding decisions. The parties must agree and sign an agreement before any settlement reached
357. at the mediation is binding. Mediation shall take place in the State of Arizona. All mediation costs shall be paid equally by the
358. parties to the Contract.

**8e.** 359. **Exclusions from Mediation:** The following matters are excluded from mediation hereunder: (i) any action brought in the Small
360. Claims Division of an Arizona Justice Court (up to $3,500), so long as the matter is not thereafter transferred or removed from the
361. Small Claims Division; (ii) judicial or nonjudicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or
362. agreement for sale; (iii) an unlawful entry or detainer action; (iv) the filing or enforcement of a mechanic's lien; or (v) any matter
363. that is within the jurisdiction of a probate or bankruptcy court. The filing of a judicial action to enable the recording of a notice of
364. pending action, or order of attachment, receivership, injunction, or other provisional remedies shall not constitute a waiver of the
365. obligation to mediate under this provision, nor shall it constitute a breach of the duty to mediate.

**8f.** 366. **Attorney Fees and Costs:** The prevailing party in any dispute or claim between Buyer and Seller arising out of or relating to this
367. Contract shall be awarded their reasonable attorney fees and costs. Costs shall include, without limitation, attorney fees, expert
368. witness fees, fees paid to investigators, and arbitration costs.

**8g.** 369. **Release of Earnest Money:** In the event of a dispute between Buyer and Seller regarding Earnest Money deposited with Escrow
370. Company, Buyer and Seller authorize Escrow Company to release Earnest Money pursuant to the terms and conditions of this
371. Contract. Buyer and Seller specifically authorize Escrow Company to act in its sole and absolute discretion in the release of
372. Earnest Money. Buyer and Seller agree to hold harmless and indemnify Escrow Company against any claim, action or lawsuit of
373. any kind, and from any loss, judgment, or expense, including costs and reasonable attorneys' fees, arising from or relating in any
374. way to the release of Earnest Money.

_____ SELLER   SELLER   ‹Initials   Commercial Real Estate Purchase Contract • Updated: February 2019
Copyright © 2019 Arizona Association of REALTORS®. All rights reserved.   Initials›   _____ BUYER   BUYER
Page 9 of 12

Produced with zipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    4715 n 12th st ,



## 9. ADDITIONAL TERMS

9a. 375. Seller to provide all development documents associated with the property, including all
376. architectural drawings and city approved and stamped plans.
377. 
378. Seller to pay for any outstanding fees for permits associated with the development of the property.
379. 
380. One or more of the principals of Glasir Capital Partners is a licensed realtor in Arizona.
381. 
382. the sale is subject to first position lienholders approval and US Bankruptcy court approval
383. 
384. inspection period to be 30 days from court approval
385. 
386. close of escrow to be 21 days from the expiration of the inspection period
387. 
388. buyers agent to receive a 2% commission
389. 
390. 
391. 
392. 
393. 
394. 
395. 
396. 
397. 
398. 

9b. 399. **Risk of Loss:** If there is any loss or damage to the Property between the date of Contract acceptance and COE or possession of
400. the Property, whichever is earlier, by reason of fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be borne by
401. Seller, provided, however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the purchase price
402. or ☐ $ _____, either Seller or Buyer may elect to cancel the Contract by written notice pursuant to Section 8c.

9c. 403. **Permission:** Buyer and Seller grant Broker(s) permission to advise the public of the existence of this Contract.

9d. 404. **Arizona Law:** This Contract shall be governed by Arizona law and jurisdiction is exclusively conferred on the State of Arizona.

9e. 405. **Time is of the essence:** The parties acknowledge that time is of the essence in performance of the obligations described herein.

9f. 406. **Broker's Fee:** Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm,
407. broker, or finder in connection with the negotiation of this Contract and/or the consummation of the purchase and sale
408. contemplated herein, other than the Broker(s) named herein, and no Broker or other person, firm or entity, other than said
409. Broker(s) is/are entitled to any commission or finder's fee in connection with this transaction as the result of any dealings or acts
410. of either Buyer or Seller. Buyer and Seller do each hereby agree to indemnify, defend, protect, and hold the other harmless from
411. and against any costs, expenses or liability for compensation, commission or charges that may be claimed by any broker, finder,
412. or other similar party, other than said named Broker(s) by reason of any dealings or acts of the indemnifying party.

>>

DocuSign Envelope ID: 7063F219-E95E-46A9-866E-E9C90E6124FA

9g. 413. **Compensation:** Seller and Buyer acknowledge that Broker(s) shall be compensated for services rendered as previously agreed
414. by separate written agreement(s). Any separate written agreement(s) shall be delivered to Escrow Company for payment at COE, if
415. not previously paid, and shall constitute an irrevocable assignment of Seller's proceeds at COE and/or payment shall be collected
416. from Buyer as a condition to Close, as applicable. If any Broker hires an attorney to enforce the collection of the brokerage fee
417. payable pursuant to this Contract and is successful in collecting some or all of such brokerage fee, the party(ies) responsible for
418. paying such brokerage fee agree(s) to pay such Broker's costs including, but not limited to: reasonable attorneys' fees, expert
419. witness fees, fees paid to investigators, and court costs. Commissions payable for the sale, leasing, or management of Property
420. are not set by any board or association of REALTORS® or multiple listing service, or in any manner other than between the Broker
421. and client. Seller and Buyer acknowledge that the Broker(s) referenced herein are third-party beneficiaries of this contract.

9h. 422. **Copies and Counterparts:** A fully executed facsimile or electronic copy of the Contract shall be treated as an original Contract.
423. This Contract and any other documents required by this Contract may be executed by facsimile or other electronic means and
424. in any number of counterparts, which shall become effective upon delivery as provided for herein, except that the Disclosure of
425. Information on Lead-Based Paint and Lead-Based Paint Hazards may not be signed in counterpart. All counterparts shall be
426. deemed to constitute one instrument, and each counterpart shall be deemed an original.

9i. 427. **Days:** All references to days in this Contract shall be construed as calendar days and a day shall begin at 12:00 a.m. and end at
428. 11:59 p.m.

9j. 429. **Calculating Time Periods:** In computing any time period prescribed or allowed by this Contract, the day of the act or event from
430. which the time period begins to run is not included and the last day of the time period is included. Contract acceptance occurs on
431. the date that the signed Contract (and any incorporated counter offer) is delivered to and received by the appropriate Broker. Acts
432. that must be performed three (3) days prior to the COE Date must be performed three (3) full days prior (i.e. – if the COE Date is
433. Friday the act must be performed by 11:59 p.m. on Monday).

9k. 434. **Entire Agreement:** This Contract, and any addenda and attachments, shall constitute the entire agreement between Seller and
435. Buyer, shall supersede any other written or oral agreements between Seller and Buyer and can be modified only by a writing
436. signed by Seller and Buyer. The failure to initial any page of this Contract shall not affect the validity or terms of this Contract.

9l. 437. **Subsequent Offers:** Buyer acknowledges that Seller has the right to accept subsequent offers until COE. Seller understands that
438. any subsequent offer accepted by Seller must be a backup offer contingent on the cancellation of this Contract.

9m. 439. **Notice:** Unless otherwise provided, delivery of all notices and documentation required or permitted hereunder shall be in writing
440. and deemed delivered and received when: (i) hand-delivered; (ii) sent via facsimile transmission; (iii) sent via electronic mail, if
441. email addresses are provided herein; or (iv) sent by recognized overnight courier service, and addressed to Buyer as indicated in
442. Section 9p, to Seller as indicated in Section 10a and to Escrow Company indicated in Section 1h.

9n. 443. **Assignment:** Any assignment of this Contract shall not release Buyer from Buyer's obligations under this Contract unless
444. otherwise agreed to by the parties in writing.

9o. 445. **Release of Brokers: Seller and Buyer hereby acknowledge that they have been and are now advised by the Broker(s) to
446. consult and retain their own experts to advise and represent them concerning the legal and income tax effects of this
447. contract, and the condition of the Property. Seller and Buyer hereby expressly release, hold harmless and indemnify
448. all Broker(s) in this transaction from any and all liability and responsibility regarding the condition, square footage/
449. acreage, lot lines or boundaries, value, financing, rent rolls, income and expense projections or proformas, environmental
450. conditions, sanitation systems, roof condition, wood infestation and wood infestation report, compliance with building
451. codes, zoning or other governmental regulations, or any other material matters relating to the Property.**

452. **(INITIALS REQUIRED)** ___SELLER___  ___SELLER___  ___BUYER___  ___BUYER___

453. THIS CONTRACT CONTAINS TWELVE (12) PAGES EXCLUSIVE OF ANY ADDENDA AND ATTACHMENTS. PLEASE ENSURE
454. THAT YOU HAVE RECEIVED AND READ ALL TWELVE (12) PAGES OF THIS OFFER AS WELL AS ANY ADDENDA AND
455. ATTACHMENTS.

>>



Case 2:20-bk-07495-DPC   Doc 184   Filed 09/01/22   Entered 09/01/22 16:14:19   Desc
Main Document    Page 21 of 22

*Commercial Real Estate Purchase Contract >>*

**9p.** 456. **Broker on behalf of Buyer:**

457. Alan Robinson

| | | |
|---|---|---|
| PRINT AGENT'S NAME | AGENT MLS CODE | AGENT STATE LICENSE NO. |

458.

| | | |
|---|---|---|
| PRINT AGENT'S NAME | AGENT MLS CODE | AGENT STATE LICENSE NO. |

459. US Investment Realty, LLC

| | |
|---|---|
| PRINT FIRM NAME | FIRM MLS CODE |

460. 1017 N Central Ave #2     Phoenix     AZ    85004

| | | | | |
|---|---|---|---|---|
| FIRM ADDRESS | CITY | STATE | ZIP CODE | FIRM STATE LICENSE NO. |

461. alanr@usiraz.com     (602) 692-6313     (480) 557-7502

| | | |
|---|---|---|
| EMAIL | PREFERRED PHONE | FAX |

**9q.** 462. **Agency Confirmation:** Broker named in Section 9p is the agent of (check one) ☐ Buyer; or ☐ both Buyer and Seller

**9r.** 463. **The undersigned agree to purchase the Property on the terms and conditions herein stated and acknowledge receipt of a**
464. **copy hereof.**

465. 9/1/2022    08/19/2022

| | | | |
|---|---|---|---|
| BUYER'S SIGNATURE | MO/DA/YR | BUYER'S SIGNATURE AND/OR NOMINEE | MO/DA/YR |

466. *Glasir Capital Partners , LLC*

| | |
|---|---|
| BUYER'S NAME PRINTED | BUYER'S NAME PRINTED |

467.

| | |
|---|---|
| BY      ITS | |

468.

| | |
|---|---|
| ADDRESS | ADDRESS |

469.

| | | | | | |
|---|---|---|---|---|---|
| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |

## 10. SELLER ACCEPTANCE

**10a.** 470. **Broker on behalf of Seller:**

471.

| | | |
|---|---|---|
| PRINT AGENT'S NAME | AGENT MLS CODE | AGENT STATE LICENSE NO. |

472.

| | | |
|---|---|---|
| PRINT AGENT'S NAME | AGENT MLS CODE | AGENT STATE LICENSE NO. |

473.

| | |
|---|---|
| PRINT FIRM NAME | FIRM MLS CODE |

474.

| | | | | |
|---|---|---|---|---|
| FIRM ADDRESS | CITY | STATE | ZIP CODE | FIRM STATE LICENSE NO. |

475.

| | | |
|---|---|---|
| EMAIL | PREFERRED PHONE | FAX |

**10b.** 476. **Agency Confirmation:** Broker named in Section 10a is the agent of (check one) ☐ Seller; or ☐ both Buyer and Seller

**10c.** 477. **The undersigned agree to sell the Property on the terms and conditions herein stated, acknowledge receipt of a copy**
478. **hereof and grant permission to Broker named on Section 10a to deliver a copy to Buyer.**

479. ☐ Counter Offer is attached, and is incorporated herein by reference. Seller must sign and deliver both this offer and the Counter
480. Offer. If there is a conflict between this offer and the Counter Offer, the provisions of the Counter Offer shall be controlling.

481. 9/1/2022    08/19/2022

| | | | |
|---|---|---|---|
| SELLER'S SIGNATURE | MO/DA/YR | SELLER'S SIGNATURE | MO/DA/YR |

482. Win Big Development LLC

| | |
|---|---|
| SELLER'S NAME PRINTED | SELLER'S NAME PRINTED |

483.

| | |
|---|---|
| BY      ITS | |

484.

| | |
|---|---|
| ADDRESS | ADDRESS |

485.

| | | | | | |
|---|---|---|---|---|---|
| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |

---

**For Broker Use Only:**

Brokerage File/Log No. _____ Manager's Initials _____ Broker's Initials _____ Date _____
                                                                                MO/DA/YR

